# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

Case No.: _____

MARIE CEDRE, on behalf of
herself and all others similarly situated,

      Plaintiff,

v.

RUSHMORE LOAN MANAGEMENT
SERVICES LLC, JAMES E. ALBERTELLI, P.A.
d/b/a ALAW, and CARLSBAD FUNDING
MORTGAGE TRUST,

      Defendants.

_____/

## CLASS ACTION COMPLAINT

Plaintiff, Marie Cedre, on behalf of herself and all others similarly situated, alleges

violations of the Florida Consumer Collection Practices Act § 559.55 *et seq.* ("FCCPA") and the

Fair Debt Collection Practices Act 15 U.S.C. 1692 *et seq.* ("FDCPA") against Defendants James

E. Albertelli, P.A. ("Albertelli Law"), Rushmore Loan Management Services LLC

("Rushmore"), and Carlsbad Funding Mortgage Trust ("Carlsbad") (collectively "Defendants").

Plaintiff and the putative class also allege violations of the Real Estate Settlement Procedures

Act, 12 U.S.C. § 2601, *et seq.* ("RESPA") solely against Rushmore.

      1.      Rushmore is a mortgage loan servicer and Albertelli Law is a law firm who

collects debts. Rushmore and Albertelli Law both charge and collect mortgage loans and fees for

third party lenders, like Carlsbad. Albertelli Law, on behalf of Rushmore and Carlsbad, charged

Plaintiff over $3,000 for mortgage fees and costs, "Estimates" necessary to reinstate her loan to

avoid foreclosure. "Estimated" fees are fees companies expect to incur in the event that certain conditions occur, but have *not* actually incurred. The Eleventh Circuit has denounced "estimated" fees associated with reinstatement of loans to be a violation of the FCCPA and FDCPA.

2.      Albertelli Law conceals the true nature of the amount owed, by including ambiguous fees and costs in the amount homeowners must pay to reinstate their loan. Additionally, Albertelli Law routinely charges borrowers $100.00 for asking for a reinstatement quote, a plain violation of RESPA.

3.      Carlsbad, Rushmore and Albertelli Law know that the "estimated" charges are illegal amounts that cannot be collected in a borrower's loan reinstatement because each maintains records of the actual costs and fees associated with each borrower's loan. Additionally, Carlsbad, Rushmore and Albertelli Law are sophisticated entities that know that the standard mortgage only allows them to recover fees and costs actually incurred.  Further, the reinstatement quote received by Plaintiff in this action was communicated in a form letter that Albertelli Law sends routinely to mortgage borrowers on Rushmore's and Carlsbad's behalf.

4.      Despite numerous trade publications, and an Eleventh Circuit decision forbidding lenders and loan servicers from collecting estimated fees, Carlsbad and Rushmore continue to collect estimated amounts based on Albertelli Law's demands to their borrowers. Albertelli Law, Rushmore and Carlsbad profit from these illegal charges because the longer a loan remains in default, the more they can charge in default-related fees that must be paid by the borrower to reinstate the loan or are added to any subsequent modification principal.

5.     By the conduct described herein, Defendants knowingly violated RESPA, FDCPA, and FCCPA, which caused Ms. Cedre and the putative class members' actual, concrete, and particularized injuries. Ms. Cedre's injuries, in particular, are detailed *infra*.

## JURISDICTION AND VENUE

6.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of RESPA and the FDCPA, federal statutes.

7.     The Court has supplemental jurisdiction over the FCCPA claims under 28 U.S.C. § 1367 because the basis of the RESPA and FDCPA federal claims involve the same debt collection practices that form the basis of the FCCPA claims.

8.     The Court has personal jurisdiction because Defendants conduct business throughout the United States, including Miami, Florida. Further, their voluntary contact with Plaintiff to charge and collect debts in Florida made it foreseeable that Defendants would be haled into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

9.     Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) because Defendants are deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced and because their contacts with this District are sufficient to subject them to personal jurisdiction.

## PARTIES

10.     Plaintiff Marie Cedre is a natural person who currently resides in Florida.

11.     Defendant Rushmore is a foreign limited liability company with its principal place of business at 15480 Laguna Canyon Road, Suite 100, Irvine CA 92618. Rushmore is one of the nation's leading specialty loan servicing companies for mortgage lenders, like Carlsbad.

12.     Defendant Albertelli Law is a professional association with a principal place of business at 208 North Laura Street, Suite 900, Jacksonville, Florida 32202 and is headquartered at 5404 Cypress Center Dr., Suite 300, Tampa, Florida 33609. Albertelli Law acts as a third party debt collector for financial institutions and servicers, like Carlsbad and Rushmore.

13.     Defendant Carlsbad is a trust that acts as a mortgage lender for homeowners, like Ms. Cedre. Wilmington Savings Fund Society, d/b/a Christiana Trust is the current owner of Plaintiff's mortgage loan, not individually but as trustee for the Carlsbad Funding Mortgage Trust. Carlsbad has a registered address of c/o Wilmington Saving Fund Society, 500 Delaware Avenue, 11th Floor, Wilmington, Delaware 19801.

## APPLICABLE LAW

**RESPA**

14.     Rulemaking authority for RESPA was assigned to the Consumer Financial Protection Bureau ("CFPB") under the Dodd-Frank Act. Pub. L. No. 111-203, 124 Stat. 1376, §§ 1061, 1098 (July 21, 2010); 12 C.F.R. pt. 1024 (formerly 24 C.F.R. pt. 3500).

15.     In 2013, the CFPB enacted new regulations implementing specific provisions under the Dodd-Frank Act for mortgage loan servicers including, but not limited to, requirements for responding to a borrower's written request for information concerning his or her mortgage loan. See 12 CFR § 1024.36 et seq.; Public Law 111-203, 124 Stat. 1376 (2010).

16.     RESPA imposes certain obligations on mortgage servicers to provide information to borrowers regarding their mortgage loans. 12 U.S.C. § 2605. In 2013, the CFPB enacted new regulations implementing specific provisions under RESPA and the Dodd-Frank Act concerning mortgage loan servicers including, but not limited to, certain requirements for responding to a

written request for information concerning a borrower's mortgage loan. *See* 12 C.F.R. § 1024.36 *et seq.*; Public Law 111-203, 124 Stat. 1376 (2010).

17.     RESPA provides a private cause of action against a mortgage servicer for violations of the provisions of § 2605, if brought within three (3) years of the violation. 12 U.S.C. § 2614.

18.     RESPA defines "servicer" as the "person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(3).

19.     RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

20.     Pursuant to RESPA, a servicer of a federally related mortgage loan "shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

21.     RESPA's mortgage servicing regulations require a servicer to provide borrowers with required disclosures that are in writing and "clear and conspicuous." 12 C.F.R. § 1024.32(a)(1).

22.     RESPA also requires a servicer to maintain policies and procedures that are reasonable designed to ensure that the servicer can provide a borrower with "accurate and timely disclosures . . . as required by this subpart or other applicable law" and "[p]rovide a borrower

with accurate and timely information and documents in response to the borrower's requests for information with respect to the borrower's mortgage loan." 12 C.F.R. 1024.38(a)(b)(1)(i),(iii).

23.     Additionally, RESPA provides that "a servicer shall not charge a fee, or require a borrower to make any payment that may be owed on a borrower's account, as a condition of responding to an information request." 12 C.F.R. § 1024.36(g).

24.     RESPA and its implementing regulations should be broadly construed to effectuate their remedial purpose. *Friedman v. Maspeth Federal Loan and Sav. Ass'n*, 30 F. Supp. 3d 183, 187 (E.D.N.Y. 2014) ("The Act was designed to throw the federal judiciary's protective cloak over residential-occupant owners of real property and their kin to protect against abuse by banks during loan closings and subsequent related events. The Act should be broadly applied to accomplish its prophylactic purposes by exercising federal subject matter jurisdiction.").

**FDCPA**

25.     The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692.

26.     The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes the false representation of "the character, amount, or legal status of any debt." *Id.* § 1692e.

27.     The FDCPA also prohibits debt collectors from "unfair or unconscionable means to collect or attempt to collect any debt," including "the collection of any amount unless such

amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* §
1692f.

28.     The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

29.     The FDCPA defines "consumer" as "any natural person obligated or allegedly
obligated to pay any debt." *Id.* § 1692a(3).

30.     The FDCPA defines "debt collector" as "any person who uses . . . any business
the principal purpose of which is the collection of any debts, or who regularly collects or
attempts to collect . . . debt owed . . . or asserted to be owed or due another." *Id.* § 1692a(6).

31.     The FDCPA defines communication as "conveying of information regarding a
debt directly or indirectly to any person through any medium." *Id.* § 1692a(2).

32.     The FDCPA defines "debt" as "any obligation or alleged obligation of a consumer
to pay money arising out of a transaction . . . [that] are primarily for personal, family, or
household purposes." *Id.* § 1692a(5).

**FCCPA**

33.     The FCCPA prohibits debt collectors from engaging in certain abusive practices
in the collection of consumer debts. *See* generally Fla. Stat. § 559.72.

34.     The FCCPA's goal is to "provide the consumer with the most protection
possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla.
Stat. § 559.552).

35.     Specifically, the FCCPA states that no person shall "claim, attempt, or threaten to
enforce a debt when such person knows that the debt is not legitimate, or assert the existence of
some other legal right when such person knows that the right does not exist." Fla. Stat. §
559.72(9).

36.     The FCCPA creates a private right of action under Fla. Stat. § 559.77.

37.     The FCCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 559.55(8).

38.     The FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debt. *Id.* § 559.72. This language includes all allegedly unlawful attempts at collecting consumer claims. *Williams v. Streeps Music Co.*, 333 So. 2d 65, 67 (Fla. Dist. Ct. App. 1976).

39.     The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 559.55(6).

## FACTUAL ALLEGATIONS

40.     On or around May 28, 2004, Ms. Cedre purchased a home in Lake Mary, Florida through a loan from Coldwell Banker Mortgage, secured by a mortgage on the property. Copies of Plaintiff's Mortgage Agreement and Mortgage Note are attached as Exhibit "A" and Exhibit "B" respectively.

41.     On or about April 24, 2008, Coldwell Banker Mortgage assigned Ms. Cedre's Mortgage Agreement and Mortgage Note to JPMorgan Chase Bank, N.A.

42.     On or around December 1, 2010, Ms. Cedre allegedly defaulted on her loan after previously making continuous payments.

43.     On or around December 15, 2014, JPMorgan Chase Bank, N.A. assigned Ms. Cedre's Mortgage Agreement and Mortgage Note to Federal National Mortgage Association. *See* Exhibit "C."

44.     Sometime in or around April 2016, Federal National Mortgage Association assigned the Mortgage Agreement and Mortgage Note to Wilmington Savings Fund Society as trustee for Carlsbad Funding Mortgage Trust. *See* Exhibit "D."

45.     Effective May, 1, 2016, Seterus, Inc. assigned its rights as the servicer of Ms. Cedre's loan to Rushmore Loan Management Services LLC. *See* Exhibit "E."

46.     Therefore, Rushmore became the servicer of the loan while Ms. Cedre's loan was already alleged to be in default. Carlsbad also became the owner of the loan while it was already alleged to be in default.

47.     On or about November 18, 2015, Albertelli Law, on behalf of Federal National Mortgage Association and Seterus, filed a complaint in the Eighteenth Judicial Circuit for Seminole County to initiate foreclosure.

48.     Plaintiff hired Smothers Law Firm ("Smothers") to defend her in the foreclosure.

49.     On or about May 24, 2016, Rushmore, on behalf of Carlsbad and Wilmington, sent a "Notice of Assignment, Sale or Transfer of Servicing" letter to Ms. Cedre through Smothers. *See* Exhibit "F."

50.     The letter advised:

> Pursuant to the Federal Fair Debt Collections Practices Act, if you do not notify us within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume the debt is valid.

> If you notify us in writing within 30 days that the debt or any portion thereof is disputed, or if you request the name and address of the original creditor, we will obtain verification of the debt or judgment against you and mail a copy to you and provide you with the name and address of the original creditor.

> You should consider this letter as coming from a Debt Collector as we sometimes act as a Debt Collector and any information received will be used for that purpose. However, if you are in Bankruptcy or received a

> Bankruptcy Discharge of this debt, this letter is not an attempt to collect a
> debt and does not constitute a notice of personal liability with respect to
> the debt.

*Id.*

51.     The letter identified the current creditor as Wilmington Savings Fund Society

("Wilmington") as trustee for Carlsbad and provided an itemization of the total amount due and

owing on the mortgage as $153,796.65. *Id.*

52.     The total amount included a "Summary of Total Debt Composition" breakdown

that included the current principal balance of $105,883.13; current unpaid accrued interest of

$35,191.85; late charges of $156.56; and "Other Charges" of 12,565.11. *Id.*

53.     Because Rushmore provided no explanation or itemization concerning the

$12,565.11 in "Other Charges," Smothers sent a written request for information, including

sufficient information to identify Plaintiff's mortgage loan, to Rushmore in a letter dated June 6,

2016, asking for a specific breakdown of charges. *See* Exhibit "G."

54.     On or about June 13, 2016, Rushmore responded and confirmed it received

Smothers' written request and advised it would respond within (30) days. *See* Exhibit "H."

55.     On or about June 16, 2016, Albertelli Law, on behalf of Rushmore and Carlsbad,

sent Smothers a "Reinstatement Letter," to be received on behalf of Ms. Cedre. See Exhibit "I."

56.     Immediately below the heading, the letter advised:

**WE MAY BE CONSIDERED A DEBT COLLECTOR. THIS IS AN
ATTEMPT TO COLLECT A DEBT. ANY INFORMATION WILL BE
USED FOR THAT PURPOSE.**

*Id.* (emphasis in original).

57.     The letter stated: "This letter responds to your request for a Reinstatement of the above referenced loan. As of the date of this letter the amount required to cure your delinquency is $66,464.21**." *Id.*

58.     The letter advised that if Ms. Cedre was not prepared to pay the full reinstatement amount that day, "then the amount owed may increase between the date of this letter and the date you reinstate the loan … because of additional interest and late charges as well as legal fees and costs that are incurred as additional steps in the foreclosure proceed." *Id.*

59.     In the letter, the total amount Defendants required Ms. Cedre to pay to reinstate her loan was $66,464.21. *Id.*

60.     This amount included $3,100 in estimated costs and fees labeled "Attorney Fees Co. Hearing Dismiss." for $250.00, "Attorney Fees & Costs Estimate" for $2,825.00," and "Co. Clerk LP Release Estimate" for $25.00.

61.     These "estimated" amounts were based on projected amounts due in the event Ms. Cedre did not actually pay before a certain future date and certain events relating to foreclosure occurred.

62.     This amount also included other ambiguous amounts that appeared to be estimates and not actually incurred, including an "Acquired Corporate Advance" charge of $7,548.30 and a "Dismissal Prep Fee" of $125.00.

63.     The total amount due also included a charge of $100.00 for "Reinstatement letter good through 6.20.16."

64.     Nowhere in either letter do any of the Defendants state that they will return any of the estimated amounts if paid by Ms. Cedre but not incurred by Rushmore, Albertelli Law, or Carlsbad.

65.     None of the Defendants provided any information or explanation concerning the $7,548.30 charge ambiguously labeled "Acquired Corporate Advance."

66.     Rushmore, as the loan servicer, acted as a debt collector by attempting to collect amounts on behalf of the principal, Carlsbad through its trustee, Wilmington.

67.     Albertelli Law acted as a third party debt collector for Rushmore by attempting to collect amounts on behalf of Rushmore and Rushmore's principal, Carlsbad through its trustee, Wilmington.

68.     Rushmore is a sophisticated mortgage loan servicer, Albertelli Law is a sophisticated law firm specializing in the mortgage and loan industry, and Carlsbad and Wilmington are sophisticated lenders. In a highly publicized and remarkably similar case issued by the Eleventh Circuit over half of a year prior to the date of Defendants' reinstatement of loan letter at issue, the Eleventh Circuit reversed the district court's grant of summary judgment on the FDCPA and FCCPA claims, opining, among other things, that the defendants were not permitted to charge "estimated" fees that had not yet incurred in their reinstatement of loan letter. *See Prescott v. Seterus, Inc.*, No. 15-10038, 2015 WL 7769235, at *2-6 (11th Cir. Dec. 3, 2015) ("[The defendants] violated the FDCPA and FCCPA by charging [the plaintiffs] estimated attorney's fees that they had not agreed to pay in the security agreement.").

69.     Over those six months, the media and trade publications consistently warned the industry against including estimated fees in reinstatement of loan letters, particularly those in the Eleventh Circuit where the *Prescott* case is binding precedent. Some of those industry warnings are attached as Exhibit "J" and include:

   a.   *11th Circuit Finds Lender Violated FDCPA And Florida Law, Reverses Ruling*, Lexis Legal News (Dec. 7, 2015) ("The appeals court found that Seterus violated the FDCPA and the FCCPA by charging Prescott estimated attorney fees and refused to affirm the District Court's decision.").

b. *Eleventh Circuit Issues Stern Warning Against Inclusion of Estimated Fees and Costs in Reinstatement Quotes*, USFN (Jan. 4, 2016) ("The Prescott decision should cause any lender, loan servicer, or law firm that provides reinstatement quotes and/or figures to borrowers to examine its practices and procedures in order to determine whether or not information being provided to borrowers in reinstatement situations could potentially constitute a FDCPA violation (or a violation of state consumer protection law, such as the FCCPA). The Eleventh Circuit has sent a clear message to the financial services industry . . . .").

c. *Recent Eleventh Circuit Reversal Sparks Upward Trend in Estimated-Fee FDCPA Litigation*, Lenderlaw Watch (Feb. 9, 2016) ("Concluding that the payoff quote was a demand for payment, [the Eleventh Circuit] held that the inclusion of fees that had not yet been incurred (even if expressly designated as such) was a demand for compensation not permitted by the plaintiff's mortgage agreement. . . . [L]oan servicers should consider the impact of *Prescott* on their communications with borrowers.").

d. *News Alert: FDCPA Violations for Estimated Fees and Costs in Reinstatement and Payoff Quotes*, Potestivo & Associates (April 15, 2016) ("The recent Appellate Court decision in Prescott, v. Seterus, Inc. . . . has gained nationwide notice. Although the decision is only binding on the Eleventh Circuit, it has opened the door and neatly laid the ground work for other jurisdictions to give similar rulings in the future. Consequently, it is important for servicers and attorneys to be informed and proactive regarding their decisions when it comes to estimated fees and costs in reinstatement and payoff quotes.").

e. *A Violation of the FDCPA – Estimating Attorney's Fees in Reinstatement Figures*, Legal League 100 Quarterly (Q2 2016) ("The federal courts have recently held that lenders may only charge for fees and expenses already incurred.").

70. Additionally, these demands were a direct breach of each of the following contractual provisions permitting only recovery of amounts actually incurred: (1) Paragraph 9 of the Mortgage Agreement permitted Defendants to recover "amounts disbursed" in protecting Carlsbad's and Wilmington's interest and rights in the Mortgage Agreement; (2) Paragraph 14 of the Mortgage Agreement prohibited Defendants from charging estimated fees, stating "[l]ender may not charge fees that are expressly prohibited in this Security Instrument or by Applicable Law"; (3) Paragraph 22 of the Mortgage Agreement permitted Defendants to collect "expenses incurred in pursuing" certain actions under the Paragraph which governed default, notice of

default, actions to cure default, and reinstatement of loans; and (4) Paragraph 7 of the Mortgage Note permitted Defendants the "right to be paid back . . . for all of its costs and expenses in enforcing" the Note, which included "reasonable attorneys' fees."

71.     Therefore, Carlsbad, and its agents, also knew demanding payment of fees not yet incurred was not permitted because it violated Carlsbad's very mortgage agreement and note.

72.     Additionally, the CFPB has received over 600 complaints concerning Rushmore's improper loan servicing practices, many involving similar complaints regarding requests for debt not actually owed. https://data.consumerfinance.gov/dataset/Consumer-Complaints/s6ew-h6mp. Rushmore's knowledge can be imputed to Carlsbad through agency theory. *See, e.g.*, *Compass Bank v. Tania Lynn Vanpelt*, No. CA10-1624 (Fla. Cir. Ct. April 2, 2015) (finding knowledge under the FCCPA could be imputed from agents to the owner of the mortgage note and holder through principles of agency).

73.     By charging estimated fees tacked on to the reinstatement amount, and failing to provide information in an accurate, clear and conspicuous manner, Defendants frustrated Ms. Cedre's ability to reinstate her loan and caused her to incur further attorney's fees and costs in connection with defending the foreclosure action and responding to the inaccurate and unclear information.  Ms. Cedre's injuries, in particular, are detailed *infra*.

74.     Additionally, Rushmore violated RESPA by charging a $100.00 fee to respond to a written request for information.

75.     Rushmore, Albertelli Law, and Carlsbad have a pattern and practice of demanding illegal fees because Ms. Cedre received a form letter from Albertelli Law that contains routinely generated line-items that included unlawful estimated amounts.

76.     On or about August 29, 2016 the Plaintiff, through counsel, sent cure letters to Rushmore, Albertelli Law, and Carlsbad. *See* Exhibit "K."

77.     After a reasonable amount of time, Plaintiff filed this lawsuit because Rushmore, Albertelli Law, and Carlsbad failed to cure its violations of state and federal law.

## ADDITIONAL FACTUAL ALLEGATIONS REGARDING MS. CEDRE'S INJURY CAUSED BY DEFENDANTS' FCCPA, FDUTPA, AND RESPA VIOLATIONS

78.     Shortly after Albertelli Law was hired to initiate Ms. Cedre's foreclosure in November 2015, Ms. Cedre entered into a fee agreement with Scott Smothers of Smothers Law Firm, P.A.

79.     Under this agreement, Ms. Cedre agreed to pay $300 per hour for Mr. Smothers's legal representation in connection with her mortgage loan payments and avoiding foreclosure.

80.     During the course of this representation, Ms. Cedre has incurred attorney's fees directly flowing from the illegal charges demanded in Defendants' reinstatement of loan letter to her, including, *inter alia*, an aggregate of approximately two hours of consultation between Ms. Cedre and Mr. Smothers concerning the reinstatement letter and confusion over the "estimated" amounts and ambiguous charges contained in the June 16, 2016 letter.

81.     Since receiving the June 2016 reinstatement of loan letter, Ms. Cedre has also incurred other expenses including, *inter alia*, missing approximately 8 hours of work at $14 per hour at her job to personally investigate the reinstatement of loan letter and to meet with her attorney in connection with the foreclosure action, including discussing the reinstatement of loan charges at the heart of this action.

82.     Demanding the full reinstatement of loan amount containing the illegal charges also damaged her credit score and stymied her ability to refinance her loan after she unsuccessfully attempted to obtain a loan at the inflated amount.

83.     Ms. Cedre now seeks to recover these additional damages she would not have incurred but for Defendants's FCCPA, FDUTPA and RESPA violations stemming from the gross "estimated" and ambiguous fees she could not pay and did not understand.

## CLASS ACTION ALLEGATIONS

### Florida Class 1

84.     Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by Rushmore's RESPA violations ( the "Florida Class 1"), subject to modification after discovery and case development:

> All Florida residents to whom Rushmore responded to a written request for information that included inaccurate, unclear or inconspicuous fees, including but not limited to "Acquired Corporate Advance," "Dismissal Prep Fee," "Other Charges," or any fee or cost labelled "Estimate," during the applicable statute of limitations.

### Florida Class 2

85.     Additionally, Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by Rushmore's RESPA violations ( the "Florida Class 2"), subject to modification after discovery and case development:

> All Florida residents to whom Rushmore, or a third party acting on Rushmore's behalf, responded to a written request for information and charged, collected, or attempted to collect a fee as a charge for responding to the written request for information.

### Florida Class 3

86.     Additionally, Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by the Defendants' FCCPA violations ("Florida Class 3"), subject to modification after discovery and case development:

All Florida residents to whom Defendants charged, collected, or attempted to collect an "Estimate" reinstatement of loan amount during the applicable statute of limitations.

## Florida Class 4

87.     Additionally, Plaintiff brings this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by Defendants' FDCPA violations ("Florida Class 4"), subject to modification after discovery and case development:

All persons in Florida to whom Defendants, charged, collected, or attempted to collect estimated reinstatement of loan amounts during the applicable statute of limitations.

88.     Class members are identifiable through Defendants' records and payment databases.

89.     Excluded from the Class are Defendants; any entities in which it has a controlling interest; its agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

90.     Plaintiff proposes that she serve as class representative for the Class.

91.     Plaintiff and the Class have all been harmed by the actions of Defendants

92.     Numerosity is satisfied. There are likely thousands of class members. Individual joinder of these persons is impracticable.

93.     There are questions of law and fact common to Plaintiff and to the Class, including, but not limited to:

a.     Whether Rushmore violated RESPA by failing to provide accurate, clear, and conspicuous information in response to a written request for information;

b.   Whether Rushmore violated RESPA by charging, collecting, or attempting to

collect a fee for responding to a written request for information;

c.   Whether Defendants violated the FCCPA by charging monies not due;

d.   Whether Defendants violated the FDCPA by charging monies not due;

e.   Whether Plaintiff and class members are entitled to actual or statutory damages as

a result of Defendants' actions;

f.   Whether Plaintiff and class members are entitled to attorney's fees and costs; and

g.   Whether Defendants should be enjoined from engaging in such conduct in the

future.

89.   Plaintiff's claims are typical of the claims of the Classes.

90.   Plaintiff is an adequate representative of the Classes because her interests do not

conflict with the interests of the Classes, she will fairly and adequately protect the interests of the

Classes, and she is represented by counsel skilled and experienced in class actions.

91.   Common questions of law and fact predominate over questions affecting only

individual class members, and a class action is the superior method for fair and efficient

adjudication of this controversy.

92.   The prosecution of separate claims by individual class members would create a

risk of inconsistent or varying adjudications concerning individual class members.

**COUNT I AS TO RUSHMORE'S VIOLATION OF THE
REAL ESTATE SETTLEMENT PROCEDURES ACT 12 U.S.C. § 2605(k)
(Florida Class 1)**

93.   Rushmore is a "servicer" because it was responsible for "servicing" Plaintiff's

mortgage loan and was scheduled to receive periodic payments from Plaintiff pursuant to the

terms of her mortgage loan and make payments of principal and interest from those amounts under the terms of the loan. 12 U.S.C. § 2605(i)(2)–(3).

94.     Plaintiff's loan is a "federally related mortgage loan" because it is secured by a first or subordinate lien, a residential real property designed for the occupancy of one to four families, and was made in whole or in part by Codwell Banker Mortgage, then JPMorgan Chase Bank, then Federal National Mortgage Association, and now Wilmington Savings Fund Society as trustee for Carlsbad Funding Mortgage Trust—lenders with deposits or accounts which were insured by the FDIC.

95.     As a servicer of a federally related mortgage loan, Rushmore must comply with any regulation implementing the provisions of RESPA. *See* 12 U.S.C. § 2605(k)(1)(E).

96.     Rushmore is required to maintain policies and procedures that are reasonably designed to ensure that it can "[p]rovide accurate and timely disclosures to a borrower as required by this subpart or other applicable law" and "[p]rovide a borrower with accurate and timely information and documents in response to the borrower's requests for information with respect to the borrower's mortgage loan." 12 CFR 1024.38(a)(b)(1)(i),(iii)

97.     On June 6, 2016, Ms. Cedre, through counsel, sent a written "request for information" to Rushmore concerning her mortgage loan and the amount necessary for reinstatement of her loan. 12 C.F.R. § 1024.36.

98.     Rushmore, through Albertelli, responded to Plaintiff's written request with information that contained "Estimates," "Acquired Corporate Advance" fees, and "Other Fees" without identifying why and for what services the fees were charged. *See* 12 C.F.R. § 1024.36(d)(1)(i); *see* 12 C.F.R. 1024.38(a)(b)(1)(i),(iii).

99.     Rushmore violated § 2605(k)(1)(E) when it failed to provide information to Plaintiff in an accurate, clear and conspicuous manner, by charging fees not yet incurred and demanding Plaintiff pay these fees to reinstate her loan. 12 C.F.R. § 1024.32(a)(1); 12 U.S.C. § 2605(k)(1)(E). Rushmore has a pattern and practice of using form letters, like the letter at issue, that contain these inaccurate, unclear, and inconspicuous responses.

100.    Rushmore's violation of RESPA harmed Plaintiff by depriving her of the statutory right to accurate, clear, and conspicuous information concerning her mortgage loan. Additionally, Plaintiff incurred attorney's fees and costs in having to follow up on Rushmore's letter, which contained unclear, inaccurate, and inconspicuous information.

101.    As a result of Rushmore's pattern and practice of violating 12 C.F.R. § 1024.36(d)(1)(i); 12 CFR 1024.38(a), (b)(1)(i), and (b)(1)(iii), Plaintiff and class members are entitled to actual damages, plus statutory damages under 12 U.S.C. § 2605(f), together with reasonable attorney's fees and costs.

### COUNT II AS TO RUSHMORE'S VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT 12 U.S.C. § 2605(k)
### (Florida Class 2)

102.    Rushmore is a "servicer" because it was responsible for "servicing" Plaintiff's mortgage loan and was scheduled to receive periodic payments from Plaintiff pursuant to the terms of her mortgage loan and make payments of principal and interest from those amounts under the terms of the loan. 12 U.S.C. § 2605(i)(2)–(3).

103.    Plaintiff's loan is a "federally related mortgage loan" because it is secured by a first or subordinate lien, a residential real property designed for the occupancy of one to four families, and was made in whole or in part by Codwell Banker Mortgage, then JPMorgan Chase Bank, then Federal National Mortgage Association, and now Wilmington Savings Fund Society

as trustee for Carlsbad Funding Mortgage Trust—lenders with deposits or accounts which were insured by the FDIC.

104.     As a servicer of a federally related mortgage loan, Rushmore must comply with any regulation implementing the provisions of RESPA. *See* 12 U.S.C. § 2605(k)(1)(E).

105.     Rushmore is prohibited from charging borrowers a fee "as a condition of responding to an information request." 12 C.F.R. 1024.36(g).

106.     Rushmore violated § 2605(k)(1)(E), through Albertelli, when it charged and attempted to collect a $100.00 fee from Plaintiff for responding to her written request for information.

107.     Rushmore has a pattern and practice of charging a fee to borrowers, like Plaintiff, for responding to a written request for information.

108.     Rushmore's violation of RESPA harmed Plaintiff by depriving her of the statutory right to accurate, clear, and conspicuous information concerning her mortgage loan. Additionally, Plaintiff incurred attorney's fees and costs in having to follow up on Rushmore's letter, which contained unclear, inaccurate, and inconspicuous information. She also suffered the imminent risk of having to pay an illegal amount.

109.     As a result of Rushmore's pattern and practice of violating 12 C.F.R. § 1024.36(g), Plaintiff and class members are entitled to actual damages, plus statutory damages under 12 U.S.C. § 2605(f), together with reasonable attorney's fees and costs.

**COUNT III AS TO RUSHMORE'S VIOLATION OF
THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)**
**(Florida Class 3)**

110.     Plaintiff is a "consumer" as defined by Fla. Stat. § 559.55(8) when she purchased her home by mortgage.

111.    Rushmore is a "person" as defined under the FCCPA.

112.    Rushmore directly, and indirectly through Albertelli, attempted to collect an illegitimate debt and enforced, claimed, and asserted a known non-existent legal right to a debt as defined by Fla. Stat. § 559.55(6) when Albertelli Law, on behalf of Rushmore, attempted to collect fees not owed. *Id.* § 559.72(9).

113.    Rushmore, as a sophisticated defendant mortgage loan servicer regularly engaged in the mortgage loan servicing industry, knew it could only charge fees actually incurred, and not "estimated" fees, because the Eleventh Circuit, in *Prescott v. Seterus, Inc.*, No. 15-10038, 2015 WL 7769235, at *2-6 (11th Cir. Dec. 3, 2015), provided express guidance on the issue more than six months prior to the date Rushmore, through Albertelli Law, sent the reinstatement of loan letter to Ms. Cedre. The language and estimated fees in Ms. Cedre's reinstatement letter was even more egregious than in *Prescott*.

114.    Rushmore also knew it could only charge fees incurred because, following the *Prescott* decision, the media and trade publications issued voluminous warnings against using "estimated" fees not incurred in reinstatement of loan letters, especially in the Eleventh Circuit. *See, e.g.*, Exhibit J.

115.    Rushmore was also put on notice of its requirements to only charge fees incurred through the many complaints to the CFPB by consumers that Rushmore charged fees not owed, discussed *supra*.

116.    By charging estimated fees tacked on to the reinstatement amount, and failing to provide information in an accurate, clear and conspicuous manner, Rushmore frustrated Ms. Cedre's ability to reinstate her loan and caused her to incur further attorney's fees and costs in

connection with defending the foreclosure action and responding to the inaccurate and unclear information. She also suffered the imminent risk of having to pay an illegal amount not owed.

117.    As a result of Rushmore's violation of the FCCPA, Plaintiff and class members are entitled to actual damages, plus statutory damages under § 559.77(2) of the FCCPA, together with reasonable attorney's fees and costs.

**COUNT IV AS TO ALBERTELLI LAW'S VIOLATION OF**
**THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)**

118.    Plaintiff is a "consumer" as defined by Fla. Stat. § 559.55(8) when she purchased her home by mortgage.

119.    Albertelli Law is a "person" as defined under the FCCPA.

120.    Albertelli Law, as a sophisticated defendant law firm regularly engaged in the mortgage loan industry, knew it could only charge fees actually incurred, and not "estimated" fees, because the Eleventh Circuit, in *Prescott v. Seterus, Inc.*, No. 15-10038, 2015 WL 7769235, at *2-6 (11th Cir. Dec. 3, 2015), provided express guidance on the issue more than six months prior to the date Albertelli Law sent the reinstatement of loan letter to Ms. Cedre. The language and estimated fees in Ms. Cedre's reinstatement letter was even more egregious than in *Prescott*.

121.    Albertelli Law also knew it could only charge fees incurred because, following the *Prescott* decision, the media and trade publications issued voluminous warnings against using "estimated" fees not incurred in reinstatement of loan letters, especially in the Eleventh Circuit. *See, e.g.*, Exhibit J. Albertelli Law is primarily based in Florida.

122.    By charging estimated fees tacked on to the reinstatement amount, and failing to provide information in an accurate, clear and conspicuous manner, Albertelli Law frustrated Ms. Cedre's ability to reinstate her loan and caused her to incur further attorney's fees and costs in

connection with defending the foreclosure action and responding to the inaccurate and unclear information. She also suffered the imminent risk of having to pay an illegal amount not owed.

123.    As a result of Albertelli Law's violation of the FCCPA, Plaintiff and class members are entitled to actual damages, plus statutory damages under § 559.77(2) of the FCCPA, together with reasonable attorney's fees and costs.

**COUNT V AS TO CARLSBAD'S VIOLATION OF**
**THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 559.72(9)**

124.    Plaintiff is a "consumer" as defined by Fla. Stat. § 559.55(8) when she purchased her home by mortgage.

125.    Carlsbad is a "person" as defined under the FCCPA.

126.    Carlsbad, through its trustee Wilmington, as a sophisticated mortgage lender regularly engaged in the mortgage loan industry, knew it could only charge fees actually incurred, and not "estimated" fees, because the Eleventh Circuit, in *Prescott v. Seterus, Inc.*, No. 15-10038, 2015 WL 7769235, at *2-6 (11th Cir. Dec. 3, 2015), provided express guidance on the issue more than six months prior to the date Albertelli Law sent the reinstatement of loan letter to Ms. Cedre. The language and estimated fees in Ms. Cedre's reinstatement letters are even more egregious than in *Prescott*.

127.    Carlsbad, through its trustee Wilmington, also knew it could only charge fees incurred because, following the *Prescott* decision, the media and trade publications issued voluminous warnings against using "estimated" fees not incurred in reinstatement of loan letters, especially in the Eleventh Circuit. *See, e.g.*, Exhibit J.

128.    Rushmore's and Albertelli Law's knowledge can also be imputed to Carlsbad through principles of agency. *See, e.g.*, *Compass Bank v. Tania Lynn Vanpelt*, No. CA10-1624

(Fla. Cir. Ct. April 2, 2015) (finding knowledge under the FCCPA could be imputed from agents to the owner of the mortgage note and holder through principles of agency).

129.    By charging estimated fees tacked on to the reinstatement amount, and failing to provide information in an accurate, clear and conspicuous manner, Carlsbad frustrated Ms. Cedre's ability to reinstate her loan and caused her to incur further attorney's fees and costs in connection with defending the foreclosure action and responding to the inaccurate and unclear information. She also suffered the imminent risk of having to pay an illegal amount not owed.

130.    As a result of Carlsbad's' violation of the FCCPA, Plaintiff and class members are entitled to actual damages, plus statutory damages under § 559.77(2) of the FCCPA, together with reasonable attorney's fees and costs.

**COUNT VI AS TO RUSHMORE'S VIOLATION OF**
**THE FAIR DEBT COLLECTION PRACTICES ACT §§ 1692e, 1692f**
**(Florida Class 4)**

131.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) when she purchased a home in Florida by mortgage.

132.    Rushmore is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another. Rushmore's May 24, 2016 letter on behalf of Carlsbad to Ms. Cedre stated: "You should consider this letter as coming from a Debt Collector . . . and any information received will be used for that purpose." The mortgage loan exception to the definition of "debt collector" does not apply because Plaintiff defaulted on her loan on or around December 1, 2010 and the loan was assigned to Wilmington as trustee for Carlsbad sometime in or around April 2016, and because the servicing rights to Ms. Cedre's loan was assigned to Rushmore, effective May 1, 2016.

133.    Rushmore engaged in indirect "communications" with Plaintiff as defined by 15 U.S.C. § 1692a(2) when Albertelli Law sent the May 24, 2016 and June 16, 2016 debt collection letter to Plaintiff demanding money purportedly due for reinstatement of her loan to avoid foreclosure.

134.    Rushmore violated 15 U.S.C. § 1692f when it charged estimated fees not owed and not expressly authorized by the agreement creating the debt.

135.    Rushmore violated 15 U.S.C. § 1692e(2)(A) when it misrepresented the amount, character, and status of the amount to reinstate Plaintiff's mortgage.

136.    Rushmore's violation of the FDCPA harmed Plaintiff by depriving her of the statutory right to accurate, clear, and conspicuous information concerning her mortgage loan. Additionally, Plaintiff incurred attorney's fees, costs, and other incidental costs, in having to follow up on Rushmore's letter, which contained unclear, inaccurate, and inconspicuous information. She also suffered the imminent risk of having to pay an illegal amount.

137.    As a result of Rushmore's violation of 15 U.S.C. § 1692e and 15 U.S.C. § 1692f, Plaintiff and class members are entitled to actual damages, plus statutory damages under 15 U.S.C. § 1692(k), together with reasonable attorney's fees and costs.

## COUNT VII AS TO ALBERTELLI LAW'S VIOLATION OF
## THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. §§ 1692f, 1692e

138.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) when she purchased a home in Florida by mortgage.

139.    Albertelli Law is a "debt collector" as defined by 15 U.S.C. § 1692a(6) because it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another.

140.    Albertelli Law's June 16, 2016 letter on behalf of Rushmore and Carlsbad to Ms. Cedre stated: "We may be considered a debt collector. This is an attempt to collect a debt. Any information will be used for that purpose."

141.    Albertelli Law  engaged in direct "communications" with Plaintiff as defined by 15 U.S.C. § 1692a(2) when it sent the May 24, 2016 and June 16, 2016 debt collection letter to Plaintiff demanding money purportedly due for reinstatement of her loan to avoid foreclosure.

142.    Albertelli Law violated 15 U.S.C. § 1692f when it charged estimated fees not owed and not expressly authorized by the agreement creating the debt.

143.    Albertelli Law violated 15 U.S.C. § 1692e(2)(A) when it misrepresented the amount, character, and status of the amount to reinstate Plaintiff's mortgage.

144.    Albertelli Law's violation of the FDCPA harmed Plaintiff by depriving her of the statutory right to accurate, clear, and conspicuous information concerning her mortgage loan. Additionally, Plaintiff incurred attorney's fees, costs, and other incidental costs, in having to follow up on Albertelli Law's letter, which contained unclear, inaccurate, and inconspicuous information. She also suffered the imminent risk of having to pay an illegal amount.

145.    As a result of Albertelli Law's violation of 15 U.S.C. § 1692e and15 U.S.C. § 1692f, Plaintiff and class members are entitled to actual damages, plus statutory damages under 15 U.S.C. § 1692(k), together with reasonable attorney's fees and costs.

## JURY DEMAND AND RESERVATION OF PUNITIVE DAMAGES

146.    Plaintiff is entitled to and respectfully demands a trial by jury on all issues so triable.

147.    Plaintiff reserves the right to amend his Complaint and add a claim for punitive damages.

## RELIEF REQUESTED

WHEREFORE. Plaintiff, himself and on behalf of the Classes, respectfully requests this Court to enter judgment against Defendants for all of the following:

a.      That Plaintiff and all class members be awarded actual damages, including but not limited to forgiveness of all amounts not owed;

b.      That Plaintiff and all class members be awarded statutory damages for each of Plaintiff's claims;

c.      That Plaintiff and all class members be awarded costs and attorney's fees;

d.      That the Court enter a judgment permanently enjoining Defendants from charging and/or collecting debt in violation of the FDCPA, FCCPA, and RESPA;

e.      That, should the Court permit Defendants to continue charging and/or collecting debt, it enter a judgment requiring them to adopt measures to ensure FDCPA, RESPA, and FCCPA compliance, and that the Court retain jurisdiction for a period of six months to ensure that Defendants comply with those measures;

f.      That the Court enter a judgment awarding any other injunctive relief necessary to ensure Defendants' compliance with the FDCPA, RESPA, and the FCCPA;

g.      That the Court enter an order that Defendants and their agents, or anyone acting on their behalf, are immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

h.      That the Court certify Plaintiff's claims and all other persons similarly situated as class action claims under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure; and

i.      Such other and further relief as the Court may deem just and proper.

Dated: December 16, 2016                    Respectfully Submitted,


                                            /s/ *James L. Kauffman*

                                            James L. Kauffman (Fla. Bar. No. 12915)
                                            BAILEY & GLASSER, LLP
                                            1054 31st Street NW, Suite 230
                                            Washington, DC 20007
                                            Telephone:  (202) 463-2101
                                            Facsimile:  (202) 342-2103
                                            Email: jkauffman@baileyglasser.com

                                            Darren R. Newhart, Esq.
                                            Florida Bar No.: 0115546
                                            E-mail: darren@cloorg.com
                                            J. Dennis Card Jr., Esq
                                            Florida Bar No.: 0487473
                                            E-mail:DCard@Consumerlaworg.com
                                            Consumer Law Organization, P.A.
                                            721 US Highway 1, Suite 201
                                            North Palm Beach, Florida 33408
                                            Telephone: (561) 692-6013
                                            Facsimile: (305) 574-0132

                                            *Counsel for Plaintiff and the Putative Class*