IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARIE CEDRE, on behalf of
herself and all others similarly situated,

Plaintiff,

v.                                                          Case No.: 6:17-cv-00511-RBD-KRS

RUSHMORE LOAN MANAGEMENT
SERVICES, LLC, JAMES E.
ALBERTELLI, P.A. d/b/a ALAW,
CARLSBAD FUNDING MORTGAGE
TRUST, and WILMINGTON SAVINGS
FUND, FSB d/b/a CHRISTIANA TRUST,

Defendants.
_____/

## PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff Marie Cedre ("Ms. Cedre") respectfully moves the Court to dismiss Defendants Wilmington Savings Fund, FSB d/b/a Christiana Trust's ("Wilmington"), Carlsbad Funding Mortgage Trust's ("Carlsbad"), and Rushmore Loan Management Services, LLC's ("Rushmore") counterclaim. In support thereof, Plaintiff states the following:

1.      On May 30, 2017, Defendants Wilmington, Carlsbad, and Rushmore filed their Answer and Affirmative Defenses to Plaintiff's Amended Complaint (ECF No. 31), along with a Cross-Claim against Defendant James A. Albertelli, P.A. d/b/a ALAW ("Albertelli") and a Counterclaim against Ms. Cedre for breach of a promissory note. (ECF No. 42).

2. Long before filing their Counterclaim, Defendants Wilmington and Carlsbad filed the same promissory note breach claim in a foreclosure action against Ms. Cedre in 2015, which is still pending in Seminole County Circuit Court, styled *Wilmington Savings Fund Society, FSB, d/b/a Christina Trust, Not individually but as Trustee for Carlsbad Funding Mortgage Trust v. Marie T. Cedre aka Marie Cedre et al.*, Case No. 59-2015-CA-002878. *See* Complaint, Exhibit B; State Court Docket; Exhibit C.

3. The Counterclaim should be dismissed under the *Colorado River* abstention doctrine. *See generally Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). *Colorado River* provides that a court should abstain when, *inter alia,* another court has already assumed jurisdiction over the property; the potential for piecemeal litigation exists; and the other litigation is significantly more advanced. Each of these factors weighs in favor of abstention here.

4. Additionally, the Court should decline to exercise jurisdiction, because the Counterclaim is a permissive counterclaim that will only confuse the jury, prejudice Ms. Cedre and undermine the class action process. Ms. Cedre brings claims based in consumer protection statutes under which many district courts have recognized public policy favors abstention. *See* Memorandum of Law, *infra* at fn. 3.

5. Finally, the Counterclaim should be dismissed with respect to Defendant Rushmore because there are no facts stated in the Counterclaim that demonstrate Rushmore has standing to sue Ms. Cedre. Rushmore is not a party to the promissory note that is the subject of the Counterclaim and has demonstrated no interest or indorsement in favor of Rushmore related to the note. *See Riggs v. Aurora Loan Services, LLC*, 36 So. 3d 932, 933

2

(Fla. 4th DCA 2010) ("If the note does not name the plaintiff as the payee, the note must bear a special indorsement in favor of the plaintiff or a blank indorsement.").

WHEREFORE, Plaintiff Marie Cedre respectfully moves this Court to dismiss Defendants Wilmington's, Carlsbad's, and Rushmore's Counterclaim (ECF No. 42).

<u>MEMORANDUM OF LAW</u>

## I.   INTRODUCTION

Defendants Wilmington Savings Fund, FSB d/b/a Christiana Trust ("Wilmington"), Carlsbad Funding Mortgage Trust ("Carlsbad"), and Rushmore Loan Management Services, LLC ("Rushmore") want this Court to exercise jurisdiction over a counterclaim against Plaintiff Marie Cedre for breach of her promissory note, despite the fact that the same claim has been pending in state court since 2015. The Court should dismiss the Counterclaim in its entirety.

As an initial matter, Rushmore's Counterclaim must be dismissed because Rushmore is not a party to the promissory note and thus has no standing.

In addition, there are also two central reasons why the Court should dismiss as to all three Defendants.

First, the Court should decline to exercise jurisdiction under the *Colorado River* abstention doctrine, because the same claims are already pending in the Seminole County Circuit Court. *See generally Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). Under *Colorado River* a court should abstain when, *inter alia,* another court has already assumed jurisdiction over the property; the potential for piecemeal litigation exists; and the other litigation is significantly more advanced. Each of these factors weighs in favor of abstention here. The circuit court obtained jurisdiction over the state law claim and the property several years ago, and that litigation is well-advanced.

Abstention is even more appropriate where, as here, the circuit court has exclusive jurisdiction, by statute, to decide issues involving title to property. *See* Fla. Stat. § 26.012(2)(g). Courts repeatedly recognize the primacy of state courts when foreclosure of real property is involved.

Second, the Court should decline to exercise jurisdiction because the Counterclaim is a permissive counterclaim that will only confuse the jury, prejudice Ms. Cedre, and undermine the class action process. Defendants' breach of promissory note claim will depend on entirely separate facts than the class claims for abusive and deceptive servicing conduct Ms. Cedre raises in her Complaint, requiring the jury to decipher what evidence applies to which claims.

Further, the Counterclaim is a disguised attempt for a set-off for the amount Defendants claim Ms. Cedre owes under the note. A set-off undermines the purpose and intent of consumer protection statutes and would—in effect—take the teeth out of them. This is so because if companies, like Defendants, know they can engage in abusive and deceptive conduct "with the best outcome being that [they] squeeze money from consumers and the worst being that the consumer's debt is merely reduced by the penalties imposed—with no money ever coming out of the [company's] pocket—[the companies] will have no reason to play by the rules." *In re Runyan*, 530 B.R. 801, 808–09 (Bankr. M.D. Fla. 2015).

For all of these reasons, this Court should abstain and allow the state court to adjudicate the foreclosure action, and let Ms. Cedre and the class pursue their separate federal and state statutory consumer protection claims here.

## II.    STATEMENT OF THE CASE

On May 28, 2004, Ms. Cedre purchased a home in Seminole County, Florida, secured by a mortgage and note ("Mortgage") with Coldwell Banker Mortgage. (Dft.'s Counterclaim ("DCC") pg. 39, ¶ 4; ECF No. 42). Ms. Cedre defaulted under the Mortgage on or about December 1, 2010. (DCC pg. 40, ¶ 13). In November 2012, JP Morgan Chase, NA filed a foreclosure complaint against Ms. Cedre in the Eighteenth Judicial Circuit in and for Seminole County, Florida, seeking to foreclose on the Mortgage.[1] Ms. Cedre hired the Smothers Law Firm, P.A. to defend her against the foreclosure. (Plt.'s First Amended Complaint ("FAC") ¶ 49, ECF No. 31). The circuit court entered an Order on March 17, 2014, dismissing the case without prejudice. The Order is attached as Exhibit "A."

On or about November 18, 2015, Defendant James E. Albertelli, P. A. d/b/a ALAW ("Albertelli"), filed a second foreclosure lawsuit, on behalf of Federal National Mortgage Association ("FNMA") (the owner of the mortgage and note), against Ms. Cedre for breach of promissory note, and it demanded payment of all amounts due and owing under the Mortgage. *See* Exhibit B.[2] FNMA substituted itself for Wilmington in the second foreclosure, which is currently pending (the "State Claim"). Defendant Rushmore services Ms. Cedre's mortgage for Wilmington, the noteholder. Rushmore, Wilmington and Carlsbad are collectively referred herein as "Defendants."

In December 2016, Ms. Cedre sued the Defendants in the U.S. District Court for the Southern District of Florida. The parties transferred the lawsuit to this Court on March 22, 2017 (ECF No. 22). Ms. Cedre filed an Amended Class Action Complaint on May 1, 2017,

---

[1] *JP Morgan Chase Bank, NA v. Marie T Cedre aka Marie Cedre et al.*, Case No. 12-CA-6048-14-W.
[2] *Wilmington Savings Fund Society, FSB, d/b/a Christina Trust, Not individually but as Trustee for Carlsbad Funding Mortgage Trust v. Marie T. Cedre aka Marie Cedre et al.*, Case No. 59-2015-CA-002878.

alleging violation of the Florida Consumer Collection Practices Act § 559.55 *et seq.*
("FCCPA"), the Fair Debt Collection Practices Act 15 U.S.C. § 1692 *et seq.* ("FDCPA"),
and the Real Estate Settlement Procedures Act 12 U.S.C. § 2601 *et seq.* ("RESPA") (ECF
No. 31). Defendants responded by filing an answer, (43) affirmative defenses, a cross-claim
against Defendant Albertelli, and a counterclaim against Ms. Cedre (ECF No. 42).

The Counterclaim, identical to the State Claim, is an action for breach of a
promissory note, demanding damages from Ms. Cedre exceeding $75,000 (DCC pg. 39, ¶
1). Defendants don't have the original note, but allege that they can enforce it under Florida
Statute § 673.3011 (*id.* pg. 40, ¶ 11). Defendants allege Ms. Cedre defaulted under the
Mortgage in December 2010, and they have accelerated all payments due under the
Mortgage (*id.* ¶¶ 13-14). Defendants demand damages of $154,159.67 (*id.* ¶ 15).

## III.   LEGAL ANALYSIS

### A.   Abstention Standard

The Court of Appeals for the Eleventh Circuit extensively analyzed the *Colorado
River* abstention doctrine in *Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320
(11th Cir. 2004). There, the court stated the *Colorado River* doctrine "addresses the
circumstances in which federal courts should abstain from exercising their jurisdiction
because a parallel lawsuit is proceeding in one or more state courts." *Ambrosia Coal and
Const. Co.*, 368 F.3d at 1327. The Eleventh Circuit noted the *Colorado River* doctrine rests
on "'considerations of wise judicial administration, giving regard to conservation of judicial
resources and comprehensive disposition of litigation.'" *Id.* at 1328 (quoting *Colorado River
Water Conservation Dist.*, 424 U.S. at 817).

The court in *Ambrosia Coal and Const. Co.* clarified that "*Colorado River* analysis is applicable as a threshold matter when federal and state proceedings involve substantially the same parties and substantially the same issues." *Id.* at 1330. It elaborated that if the abstention doctrine required identical parties in a federal and state case, "only litigants bereft of imagination would ever face the possibility of an unwanted abstention order, as virtually all cases could be framed to include additional issues or parties." *Id.* (citing *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1288 (7th Cir. 1988) (finding the addition of defendants in a federal case relative to a state case would not bar application of the *Colorado River* abstention doctrine as "[i]f it did, parties could avoid the doctrine of Colorado River by the simple expedient of naming additional parties.")).

Turning to the *Colorado River* abstention doctrine itself, the Eleventh Circuit recited six factors that district courts should weigh in analyzing whether abstention is proper, once this threshold issue is resolved: "(1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights." *Id.* at 1331 (citing *Am. Bankers Ins. Co. of Florida v. First State Ins. Co.*, 891 F.2d 882, 884 (11th Cir. 1990). The court added, "'[t]he vexatious or reactive nature of either the federal or the state litigation'" should also be considered in deciding whether *Colorado River* abstention is proper. *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 17 n.20, 103 S. Ct. 927 (1983)). However, the court noted "'[n]o one factor is necessarily determinative,'" *id.* at 1332 (quoting *Colorado River Water Conservation Dist.*,

424 U.S. at 818), and "'[t]he weight to be given to any one factor may vary greatly from case to case[.]'" *Id.* (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 16).

B.    **Argument**

1.    The *Colorado River* doctrine compels the Court to abstain from accepting jurisdiction of Defendants' counterclaim.

As above, to determine whether abstention is appropriate, the Court must first determine whether the state claim and counter-claim involve "substantially the same parties and substantially the same issues." *Jackson-Platts v. Gen. Elec. Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013) (citing *Ambrosia Coal and Const. Co.*, 368 F.3d at 1330).

Here, the parties are the same, with the exception of Rushmore, which lacks standing for the reasons discussed at Section 3 below. And, the Counterclaim involves the same issues as the State Claim – both seek the same relief, namely damages for breach of the promissory note. These similarities are sufficient "to justify the conclusion that the state court litigation will be an adequate vehicle for the complete and prompt resolution of the issue between the parties." *Sini v. Citibank, N.A.*, 990 F. Supp. 2d 1370, 1376 (S.D. Fla. 2014) (citations omitted).

Because *Colorado River* applies, the Court must next analyze and weigh the six factors, to the extent they are applicable. Here, only the first, third, and fourth factors are relevant. Each weighs strongly in favor of abstention.

a.    *Abstention is proper because the circuit court assumed jurisdiction over Ms. Cedre's property in 2012 and 2015.*

In *Colorado River,* the Supreme Court recognized that: "[i]t has been held ... that the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts." *Beepot v. J.P. Morgan Chase Nat. Corp. Services, Inc.*, 3:10-CV-423-J-

34TEM, 2011 WL 4529604, at *8 (M.D. Fla. Sept. 30, 2011) ("[T]he Court [] nonetheless agree[s] that the fact that the State Court Foreclosure Proceeding concerns Florida real estate weighs most heavily in favor of abstention here") (citing *Colorado River Water Conservation Dist.*, 424 U.S. at 818); *see also Ambrosia Coal and Const. Co.*, 368 F.3d at 1328.

The circuit court assumed jurisdiction over Ms. Cedre's property under Florida Statute § 26.012(2)(g) (circuit courts "shall have exclusive original jurisdiction … [i]n all actions involving the title and boundaries of real property"). Foreclosure of a mortgage on real estate involves "the title and boundaries of real property." *Alexdex Corp. v. Nachon Enterprises, Inc.*, 641 So. 2d 858, 860–61 (Fla. 1994) (holding that Fla. Stat. § 26.012(2)(g) grants exclusive jurisdiction to circuit courts for actions to enforce an obligation secured by property located in the jurisdiction of the circuit court).

In the state court action Defendants are seeking to foreclose the property in Seminole County, and damages for Ms. Cedre's alleged breach of promissory note. The state court's assertion of jurisdiction over the property is evidenced by the Lis Pendens filed on November 25, 2015, in the circuit court. *Hendricks v. Mortgage Elec. Registration Sys., Inc.*, 8:12-CV-2801-T-30TGW, 2013 WL 1279035, at *4 (M.D. Fla. Mar. 28, 2013) ("The first factor weighs in favor of abstention as the state court has already asserted its jurisdiction over the Property as evidenced by the Notice of Lis Pendens filed in the state court proceeding on October 6, 2011.") (citing *Black's Law Dictionary* 950 (8th ed. 2004)) (defining "lis pendens" as "[t]he jurisdiction, power, or control acquired by a court over property while a legal action is pending").

Because the circuit court – which has exclusive jurisdiction over the property with the power to decide its disposition – has properly assumed jurisdiction, this Court should abstain.

> **b.**    *Abstention is proper because the parallel claims will create piecemeal litigation resulting in potentially inconsistent verdicts.*

The circumstances giving rise to the State Claim and Counterclaim are identical, and the evidence needed to prove them is also identical. By accepting jurisdiction, the Court would engage in "repetition of efforts" with the circuit court that inevitably wastes judicial resources.

Courts in the middle district and elsewhere have dismissed claims where, like here, a parallel mortgage foreclosure is pending. *Sergeon v. Home Loan Ctr., Inc.*, 3:09-CV-01113-J-32, 2010 WL 5662930, at *4 (M.D. Fla. Oct. 26, 2010), *report and recommendation adopted,* 3:09-CV-1113-J-32JBT, 2011 WL 308176 (M.D. Fla. Jan. 27, 2011) ("There are a number of cases in which *Colorado River* abstention is applied when a state mortgage foreclosure case is pending …. This Court agrees with this line of cases holding that abstention under *Colorado River* is appropriate in these circumstances.") (citations omitted); *see also Hendricks*, 2013 WL 1279035, at *4 (finding abstention is favored "[b]ecause this dispute primarily involves rights in Florida real estate, it is obviously deleterious, to the point of being "abnormally" so, to have two separate courts trying to determine property rights in [the same property]"); *Sergeon*, 2010 WL 5662930, at *1 (finding *Colorado River* abstention proper in light of a pending state court foreclosure proceeding); *Beepot v. J.P. Morgan Chase Nat. Corp. Svcs.,* No. 3:10–cv–423–J–34TEM, 2011 WL 459604, at *1, *9 (M.D. Fla. Sept. 30, 2011) (citation omitted) (finding the third *Colorado River* factor weighed heavily in favor of abstention in the case of property

that was the subject of a federal court action and a state court foreclosure action because if both actions were allowed to "proceed independently, there [was] a risk of inconsistent results, which would throw the ownership of the subject property in turmoil, and lead to an 'abnormally excessive or deleterious' result."); *see generally Colorado River Water Conservation Dist.*, 424 U.S. at 819 (endorsing "the rule requiring that jurisdiction be yielded to the court first acquiring control of property, for the concern in such instances is with avoiding … additional litigation through permitting inconsistent dispositions of property").

Courts have taken the same approach outside of the mortgage foreclosure context. *Rambaran v. Park Square Enterprises, Inc.*, 6:08-CV-247-ORL19GJK, 2008 WL 4371356, at *5 (M.D. Fla. Sept. 22, 2008) (citing *Leaderstat, LLC v. Abisellan*, 252 F.R.D. 698 (M.D. Fla. 2007)) ("Because the plaintiff seeks to force the defendant to defend two identical lawsuits in two different forums at unnecessary inconvenience and expense, a distinct danger of oppressively duplicative, piecemeal litigation exists. The third factor weighs strongly in favor of a stay."); *Signal Tech., Inc. v. PennSummit Tubular, LLC*, 09-60636-CIV, 2010 WL 454800, at *5–6 (S.D. Fla. Feb. 9, 2010); *Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1344 (S.D. Fla. 1999); *Allied Mach. Serv., Inc. v. Caterpillar Inc.*, 841 F. Supp. 406, 408 (S.D. Fla. 1993).

The State Claim and Counterclaim also pose a greater risk of creating conflicting rulings based on identical facts. For example, if the circuit court rules for Ms. Cedre in the State Claim, the Defendants will have another chance to relitigate their claims — and potentially obtain a different result — in this Court. This type of inapposite result would throw ownership of Ms. Cedre's property into turmoil. *Sergeon*, 2010 WL 5662930, at

*7, *report and recommendation adopted,* 3:09-CV-1113-J-32JBT, 2011 WL 308176 (M.D. Fla. Jan. 27, 2011) ("Should both actions proceed, there is a risk of opposite results, which would throw ownership of the subject condominium into turmoil.").

c.   ***Abstention is proper because the circuit court acquired jurisdiction over Ms. Cedre's property long before the Counterclaim was filed.***

The court "must consider which forum acquired jurisdiction first." *Sini*, 990 F. Supp. 2d at 1377. Specifically, the court should weigh "the progress of the proceedings and whether the party availing itself of the federal forum should have acted earlier." *Id.* (citations omitted).

The circuit court first obtained jurisdiction over Defendants' claim back in 2012, when Ms. Cedre was first sued. A second foreclosure suit was then filed against Ms. Cedre in 2015. Defendants could arguably have availed themselves of federal jurisdiction in 2015, but they chose to file the second lawsuit in state court. Not only did the Defendants file the second lawsuit in state court, but the litigation has now progressed through motion practice and discovery. The advanced stage of the state court litigation supports abstention. *Sini*, 990 F. Supp. 2d at 1378; *see, e.g., Bosdorf*, 79 F. Supp. 2d at 1345; *Nobel Ins. Group v. First Nat. Bank of Brundidge*, 50 F. Supp. 2d 1215, 1218 (M.D. Ala. 1999); *Rambaran*, 2008 WL 4371356, at *7; *O'Dell v. Doychak*, 606-CV-677-ORL-19KRS, 2006 WL 4509634, at *8 (M.D. Fla. Oct. 20, 2006); *Shallal v. Elson*, 98-8739-CIV, 1999 WL 33957906, at *3 (S.D. Fla. Apr. 12, 1999); *Jackson-Platts*, 727 F.3d at 1142 (finding that a federal action was "further along" than a parallel state action where discovery had commenced in the federal action).

12

2.    **The Counterclaim is permissive and the Court should decline to exercise its supplemental jurisdiction.**

Under Federal Rule of Civil Procedure 13(a), "a counterclaim is compulsory if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim. The Eleventh Circuit has adopted the "logical relationship" test to determine if a counterclaim meets the requirements of Rule 13(a)." *James D. Hinson Elec. Contracting Co., Inc. v. Bellsouth Telecommunications, Inc.*, 3:07-CV-598-J-32MCR, 2011 WL 2448911, at *1 (M.D. Fla. Mar. 28, 2011) (internal quotations omitted) (citing *Republic Health Corp. v. Lifemark Hosps. of Florida, Inc.*, 755 F.2d 1453, 1455 (11th Cir. 1985)). Similarly, Florida courts also apply a "logical relationship" test. A logical relationship exists if the claims' "operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendant." *Id.* Therefore, any counterclaim that is not compulsory is permissive. *Thomas v. Commercial Recovery Sys., Inc.*, 807-CV-1104-T-23MAP, 2008 WL 906770, at *1 (M.D. Fla. Apr. 1, 2008).

Here, the Defendants' Counterclaim arose from Ms. Cedre allegedly defaulting under the Mortgage. Meanwhile, Ms. Cedre's claims arose from Defendants charging illegal, "estimated" fees while attempting to collect a debt. The elements of these claims, and the evidence required to prove them, are mutually independent from one another.

Here, the Court can decline to exercise jurisdiction over the Counterclaim because it is permissive and will only serve to confuse the issues and jury.

Courts have long held that claims for alleged nonpayment of a debt are not compulsory to consumer protection claims. For example, in *Whigum v. Heilig-Meyers Furniture Inc.*, 682 So. 2d 643, 646 (Fla. 1st DCA 1996), plaintiff purchased furniture on

13

credit and failed to pay the debt when due. In turn, the defendant tacked a past due debt

notice to the plaintiff's door. *Id.* at 644. Like here, plaintiff sued defendant for violating the

FCCPA. The court, recognizing that the claims do not "arise" from the same operative

facts, held "that an action on a debt for the purchase of consumer goods is a *permissive*

counterclaim to an action under the Florida Consumer Collection Practices Act." *Id.* at 646

(emphasis added). The *Whigum* court severed the counterclaim. *Id.* ("Because the

counterclaims proposed by Heilig-Meyers are permissive and not compulsory, they can be

severed from the main claim and they do not impair the court's ability to resolve the main

claim in a single lawsuit."); *see Equity Residential Properties Trust v. Yates*, 910 So. 2d 401,

404 (Fla. 4th DCA 2005) (stating that "the bulk of authority on the issue holds that actions

to collect debts are not compulsory counterclaims to actions predicated on the violation of

consumer protection type laws").

      In addition, a district court, in its discretion, may decline to exercise supplemental

jurisdiction over a permissive counterclaim under subsection (a) if—

> (1) the claim raises a novel or complex issue of State law;
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
>
> (3) the district court has dismissed all claims over which it has original jurisdiction; or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

      Here, there are exceptional circumstances related to judicial economy that

will be best served by the Court if jurisdiction is declined. The parties to this case will

inevitably file the same discovery, take the same depositions, and engage in the same

motion practice that have taken place in state court on the duplicative Counterclaim here. Further, the state court action is unquestionably an adequate vehicle for a complete resolution of the state law claim between the parties, as Wilmington and Carlsbad have already chosen to proceed with the breach of note claim in the state court forum. Assuming jurisdiction would only drain scarce judicial resources and fail to promote judicial economy. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 348–49 (1988) ("The Court should only exercise its jurisdiction when doing so would promote judicial economy.").

Other courts faced with a similar issue declined to exercise jurisdiction based on the public policy underlying consumer protection statutes. *See Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063, 1068 (E.D. Cal. 2005) (finding the public protection policy underlying the FDCPA would be best served by declining to exercise supplemental jurisdiction); *Hart v. Clayton-Parker & Associates, Inc.*, 869 F. Supp. 774, 777 (D. Ariz. 1994) (granting plaintiff's motion to dismiss counterclaim because, in part, "lawsuits arising from the underlying contractual debt are not compulsory counterclaims"); *Leatherwood v. Universal Bus. Serv. Co.*, 115 F.R.D. 48, 50 (W.D.N.Y. 1987) (concluding that "the FDCPA claim involves the enforcement of federal policy and federal statutory law concerning a debt collector's conduct in collecting a debt" and that the "claim does not concern any obligations created by the underlying debt").[3]

---

[3] Additionally, there are public policy considerations under the FDCPA that other districts have recognized support abstention. *See Graf v. Pinnacle Asset Grp., L.L.C.,* 2015 U.S. Dist. LEXIS 18069 (D. Minn. Jan. 27, 2015) (declining to exercise jurisdiction over counterclaims given their size and underling purposes of FDCPA even if court's supplemental jurisdiction under § 1367(a) extends to permissive counterclaims and debt collector's permissive counterclaims for collection of the alleged underlying debt fall within that jurisdiction); *Campos v. Western Dental Services, Inc.,* 404 F. Supp. 2d 1164, 1168–1170 (N.D. Cal. 2005) (in putative class

The Defendants will not be prejudiced if the Court dismisses or severs the Counterclaim because the exact same claim is pending in the state court. Therefore, the Court should dismiss the Counterclaim from this lawsuit.

### 3. Rushmore fails to demonstrate standing to sue Ms. Cedre for breach of a promissory note.

Rushmore's Counterclaim doesn't contain the bare minimum allegations to show that Rushmore has standing to sue Ms. Cedre. *Riggs v. Aurora Loan Services, LLC*, 36 So. 3d 932, 933 (Fla. 4th DCA 2010) ("If the note does not name the plaintiff as the payee, the note must bear a special indorsement in favor of the plaintiff or a blank indorsement.")[4]. The note attached as Exhibit A to the Counterclaim doesn't name Rushmore, nor does it contain a special or blank endorsement. Further, there are no factual allegations (not even conclusory ones) explaining how Rushmore acquired the Mortgage. *McLean v. JP Morgan Chase Bank Nat. Ass'n*, 79 So. 3d 170, 173 (Fla. 4th DCA 2012) (finding that, to establish standing, plaintiff must show it held or owned note at time complaint was filed.)

A plaintiff seeking foreclosure can submit "an assignment from payee to the plaintiff or an affidavit of ownership proving its status as holder of the note in order to establish standing. *Gorel v. Bank of New York Mellon*, 165 So. 3d 44, 46 (Fla. 5th DCA 2015) (citations omitted.) But noticeably absent again from the Counterclaim is an assignment or an affidavit of ownership supporting Rushmore's standing to sue under the mortgage.

---

action bringing FDCPA and state consumer protection violations, finding supplementary jurisdiction to exist over permissive debt collection counterclaim, but declining to exercise that jurisdiction for fear of deterring future FDCPA claims); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Ledar Transp.*, 2004 WL 5376211, at *8–13 (W.D. Mo. Jan. 7, 2004) (in certified class action alleging violations of federal leasing regulations for registered motor carriers, dismissing state law breach-of-contract counterclaims against absent class members and named plaintiffs for lack of supplemental jurisdiction, as claims are permissive rather than compulsory).

[4] For argument sake, Ms. Cedre assumes Wilmington and Carlsbad have standing to sue for breach of promissory note.

These key items are missing because Rushmore hasn't—and can't—provide any evidence of its standing as it is merely a mortgage servicer, not a noteholder. *McLean*, 79 So. 3d at 173 ("A crucial element in any mortgage foreclosure proceeding is that the party seeking foreclosure must demonstrate that it has standing to foreclose."). These deficiencies are fatal to Rushmore's Counterclaim against Ms. Cedre. It should be dismissed on this basis.

## IV.    CONCLUSION

Looking at the Counterclaim in a "pragmatic, flexible manner" the State Claim and Counterclaim are duplicative because they are identical. None of the Defendants-Counter Plaintiffs here will be prejudiced if the Court dismisses the Counterclaim because the parties will be in the same position as before. Ms. Cedre respectfully requests the Court to dismiss the Defendants' Counterclaim.

Dated: June 27, 2017                                  Respectfully submitted,

                                                      /s/  *James L. Kauffman*
                                                      James L. Kauffman (Fla. Bar No.012915)
                                                      BAILEY & GLASSER LLP
                                                      1054 31st Street NW, Suite 230
                                                      Washington, DC 20007
                                                      Telephone: (202) 463-2101
                                                      Facsimile: (202) 463-2103
                                                      Email: jkauffman@baileyglasser.com

                                                      J. Dennis Card, Jr. (Fla. Bar No. 0487473)
                                                      Darren Newhart, (Fla. Bar No. 0115546)
                                                      CONSUMER LAW ORGANIZATION, P.A.
                                                      721 US Highway 1, Suite 201
                                                      North Palm Beach, Florida 33408
                                                      Telephone: (561) 692-6013
                                                      Facsimile: (305) 574-0132

17

E-mail: darren@cloorg.com
E-mail: DCard@Consumerlaworg.com

*Counsel for Plaintiff and the Putative
Class*

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served

electronically via CM/ECF on this 27th day of June 2017 upon all counsel of record.

By: */s/ James L. Kauffman*
James L. Kauffman
Fla. Bar No. 597821
jkauffman@baileyglasser.com